Avram E. Frisch, Esq.
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------------- x

**ERRICA JAMES INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER S.C.**

Docket No.

Plaintiff,

**VERIFIED COMPLAINT AND JURY DEMAND**

- against -

**BOARD OF EDUCATION OF THE FRANKLIN TOWNSHIP PUBLIC SCHOOLS; JOHN RAVALLY; NICHOLAS SOLOMON; ROD BRUNDIGE; ORVYL WILSON; ANTHONY HOLLEY; MAKAI HOWARD; John Does 1-50; Jane Does 1-50**

Defendants.

---------------------------------------------------------------- x

**COMPLAINT**

Plaintiff, Errica James ("James") on behalf of herself and her minor daughter S.C., by way of complaint against the above named Defendants, alleges and says:

**JURISDICTION AND VENUE**

1. This is an action for damages under 42 U.S.C. 1983; damages and injunctive relief under Title IX of the Civil Rights Act, 20 U.S..C. §1681 and 28 U.S.C. § 1343; and pendant state law claims. This action arises out of the sexual assault of the Plaintiff S.C. due to the

behavior of the Defendants during her school day at Franklin High School on March 13, 2024, along with other acts of sexual harassment that have prevented S.C. from attending school.

2. This court has jurisdiction pursuant to 28 U.S.C. §1331, granting the court jurisdiction over civil actions arising out of the laws of the United States .

3. This Court also has jurisdiction over related state law claims pursuant to 28. U.S.C. § 1367.

4. Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. § 1391(b)(1) as Defendants reside in this district.

## THE PARTIES

5. Plaintiff, Errica James on behalf of her minor daughter S.C., address omitted to preserve privacy of the Plaintiff, is Plaintiff in her personal capacity and on behalf of her minor daughter.

6. Defendant, Board of Education of Franklin Township Public Schools (the "Board") is a body corporate of the State of New Jersey with the responsibility for the management of the public schools situate in Franklin Township New Jersey. Upon information and belief, Defendant Board maintains its principal place of business at 2301 Route 27 Somerset, NJ 08873.

7. Defendant John Ravally ("Ravally") is the Superintendent of the Franklin Township School District, and in that capacity is responsible for the management of the school district and ensuring the safety of all students in the district, including ensuring that students are not the victims of bullying or sexual harassment. Upon information and belief, Ravally resides at 109 Leone Dr, Brick, NJ 08724.

8. Defendant Nicholas Solomon ("Solomon") is the principal of Franklin High School and in that capacity has overall responsibility for the education, discipline and safety of students at Franklin High School. Upon information and belief, Solomon resides at 219 Wilson Rd, Somerset NJ 08873.

9. Defendant Rod Brundige ("Brundige") is the vice principal of Franklin High School with responsibility for discipline and other safety issues for Plaintiff's grade at Franklin High School. Brundige, through a pattern of neglect failed to fulfill his responsibilities, leading to the unfortunate events of March 13, 2024. Upon information and belief, Brundige resides at 142 Winslow Avenue, Somerset, NJ 08873.

10. Orvyl Wilson ("Wilson" and together with the Board, Ravally, Solomon and Brundige, collectively, the "District Defendants") is the Director of School Management and Student Advocacy for the Franklin School District. Upon information and belief, Wilson resides at 10 Augusta Street, Wrightstown, NJ 08562.

11. Anthony Holley ("Holley") is, upon information and belief, a 16 year old student at Franklin High School. On March 13, 2024, he forcibly raped S.C. on the grounds of Franklin High School during the school day.

12. Makai Howard ("Howard") is, upon information and belief, a student at Franklin High School. Howard has been harassing and bullying S.C. via Instagram messages including sending sexually explicit videos of himself masturbating.

13. John Does 1-50 and Jane Does 1-50 are various individuals whose identity are currently unknown who assisted or participated in the series of harassment and assault against S.C. or assisted the District Defendants in violating their duties to the Plaintiffs.

**FACTUAL BACKGROUND**

14. S.C. was a 16 year old student at Franklin High School in Franklin, Township during the 2023-2024 school year.

15. She began attending the school upon moving to Franklin from New York City as a 9th grade at the beginning of the 2022-2023 school year.

16. From the beginning she was the subject of harassment and bullying. Initially, the incidents were minor, such as being shoved in the hallway in her first month of school in September 2022. She initially disregarded this incident.

17. In October 2022, S.C. was sexually and physically harassed by a student named Andre Clark[1] during gym and track and field. The incident was reported to a teacher, Brundidge and Solomon.

18. In response to this incident, Clark was apparently removed from S.C.'s class.

19. In November 2022, students were taking pictures of S.C. and her boyfriend, and sent the pictures to her boyfriend's former girlfriend, leading to verbal harassment. This incident was not reported to the school.

20. In December 2022, a student named Carl Moody made comments about S.C.'s body and clothing and made sexually explicit remarks. He also placed his hand on S.C.'s buttocks.

21. This incident was reported to a teacher, Brundidge and Solomon, and an incident report was written up.

22. The school made a single phone call, and Moody denied the incident and no further action was taken by the School, Solomon or Brundidge.

23. In January 2023, S.C. was sexually harassed by a student named Rohan Winter in the gym. He touched her without consent and stayed close to her despite attempts by S.C. to move

---

[1] Plaintiff believes this name might have been an alias, but is unaware of the individual's actual name.

away from him. This incident was reported to James, but was not reported to the school due to the expectation that nothing would be done, an expectation that would be borne out in subsequent incidents.

24. In March 2023, students began circulating photos of S.C. sitting on her boyfriend's lap via over the Instagram platform.

25. These photos led to generalized bullying and taunting from other students.

26. The situation was reported to Solomon and Brundidge by others.

27. Instead of attempting to reign in the harassment and to prevent students from engaging in cyber-bullying, the School placed S.C. and her boyfriend in detention for allegedly "breaking the code of conduct."

28. Apparently, during this incident, as evidenced by the photos being circulated by students, S.C.'s skirt had ridden up and was thus shorter than permitted by the code of conduct.

29. The District made no efforts to ensure S.C.'s safety and freedom from bullying and harassment. Instead, she was punished for what is defined in the Code of Conduct as a minor infraction while the School violated the law and its own bullying code of conduct.

30. Around this time, students posted photos of S.C. in the school gym without consequence.

31. During the detention, S.C. asked for permission to go for a walk, which was typically permitted. Despite this, the Vice Principal supervising detention had security locate S.C. and return her to detention. Brundidge then gave S.C. an in-school suspension for allegedly violating her detention.

32. When she was in school with her boyfriend in April 2023, bullying and taunting continued by various individuals whom she knew by first name only.

33. By June 2023, the harassment had temporarily calmed, and then she left school for the summer break.

34. When S.C. returned to school in September 2023, there were chaotic moments. There was an individual who threatened S.C. and her boyfriend with weapons and sex toys. This incident was reported, and it is possible that this student was expelled, as he was no longer seen in school.

35. In October 2023, she started attending extracurricular clubs, and photos of her feet started to be posted on Instagram. These photos were eventually removed by Instagram.

36. In December 2023, the bullying was continuing and S.C. made a formal Harassment, Intimidation and Bullying complaint to the administration, including Solomon and Brundidge.

37. An investigation commenced in January 2024, and bullying finally started to cease.

38. Then she was hit with a ball during gym class in an apparently intentional assault while walking to retrieve some of her belongings.

39. The incident was being recorded by a student, which is why S.C. believed it was intentional.

40. A student then yelled at S.C. that she "was going to slap the F**K out of this B***ch."

41. This incident was reported to the administration, but Brundidge declared that he could not determine who was responsible and as such could do nothing about it.

42. In this environment of constant sexual harassment, physical assaults and bullying, along with cyber bullying occurring outside of school, students apparently believed that S.C. was fair game for all sorts of attacks.

43. The environment encountered by S.C. was characterized by pervasive violence and sexual hostility. It was a place where threats and physical altercations were commonplace, and where sexual harassment was rampant.

44. The District Defendants, who were responsible for the safety of students in the school district, and in the case of Solomon and Brundige specifically in Franklin High School, refused to take any steps to cure the hostile environment and upon information and belief, took steps to encourage the conduct of complained of in this case.

45. The Board Defendants' refusal to take bullying seriously and their improperly conducted investigations led to the terrible impact on S.C. as will be described in the succeeding paragraphs.

46. On March 13, 2024, during an in school club, Holley violently raped S.C. on school grounds.

47. After the rape occurred, S.C. promptly reported it to Dr. Gayle Nelson a support room teacher at Franklin High School.

48. Dr. Nelson had been a confidante of S.C. and had previously informed her that she could come to her classroom for assistance when S.C. had informed her of the constant bullying at Franklin High School.

49. Dr. Nelson had told S.C. that she was always safe in her classroom and that she could come whenever she was in distress.  Dr. Nelson was never part of any bullying investigation conducted in response to the complaints made by S.C.

50. Dr. Nelson was not trained to handle incidents of this magnitude, but attempted to contact Solomon who was unreachable.

51. Unaware of any protocol to handle sexual assault cases, Nelson told S.C. to return to classes and continue her school day while she attempted to reach Solomon.

52. By the end of the school day, Nelson contacted Wilson, who told her not to discuss the matter further and that he and Solomon would handle it.

53. The Board Defendants have created an environment that they knew was unsafe and permitted constant sexual harassment of S.C. Nelson reported that she and other educators believed that the Board and the senior management did not handle bullying allegations correctly.

54. She reported that investigations were not thorough and often were conducted dishonestly in order to reach a particular outcome, for example an investigation involving Solomon's son was incorrectly handled in order to benefit Solomon and his family.

55. After Nelson's conversation with Orvyl Wilson she was never interviewed by any investigator for the Board or any police investigation.

56. This unsafe campus, which is the result of years of neglect and intentional misconduct, then resulted in Holley's despicable act.

57. After this event, the Board arranged for S.C. to receive home instruction for the remainder of the year.

58. S.C. has enrolled in a public school to complete her last two years of high shcool, and James is being forced to pay for a private school to find a safe educational environment for her daughter.

59. Unfortunately, even after the rape, cyber bullying has continued.

60. Howard contacted S.C. via Instagram and sent sexually explicit videos of himself masturbating.

61. This series of events has led to substantial damages for James and S.C.

62. As noted, James now has to pay for private school, when she is entitled to a free public education.

63. She also has suffered substantial emotional harm from the assault on her daughter.

64. S.C. has suffered from the attack, along with the School's absolute disregard for safety. She has suffered both physical and emotional distress from the incident.

## **COUNT ONE (TITLE IX AGAINST THE BOARD)**

65. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

66. The Supreme Court of the United States has held that public schools that receive public funding are potentially liable under Title IX for an environment where the District and its employees are deliberately indifferent to peer on peer sexual harassment and that led to an intimidating, hostile, offensive and abusive school environment in violation of Title IX.

67. The Board Defendants were on notice of a pervasive and continuing pattern of harassment directed at S.C. and permitted this environment to continue despite their state law obligations to investigate and remedy bullying and to prevent discrimination on the basis of sex under both Federal law and the New Jersey Law Against Discrimination.

68. S.C. was excluded from participation in her education at Franklin High School, denied the benefits thereof, and suffered due to discrimination on the basis of her sex.

69. The Board at best stood idly bye while S.C. was suffering from sexual harassment and assault that occurred over a period lasting well over a year.

70. At times, its appears that the Board's policies were to encourage such behavior by lax enforcement of anti-bullying and harassment policies in regard to favored students, such as athletes and relatives of administrators.

71. The Board had authority to take action, and was put on notice on many occasions of the harassment being suffered by S.C.

72. All of the students engaged in harassment were under the Board's control, the unsafe environment at Franklin High School has persisted for years without any attempt to remedy the environment (not only in regard to S.C., but to many other students).

73. The abuse also occurred on school grounds, including a rape occurring during a school program on school grounds.

74. The Plaintiffs are thus entitled to damages for S.C.'s exclusion from Franklin High School and its programs.

## COUNT TWO (LAW AGAINST DISCRIMINATION)

75. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

76. New Jersey law provides a cause of action under the Law Against Discrimination for discrimination, including sexual harassment, perpetrated by students against other students, and that is not remedied by a School District.

77. As described above, the Board Defendants knew of the harassment against S.C., but failed to take reasonable steps to remedy the situation.

78. The harassment was based on S.C.'s gender, her affectional or sexual orientation, as she was harassed by others with frequent claims that she was promiscuous.

79. This failure resulted in S.C.'s rape and exclusion from the benefits she was entitled to at Franklin High School.

80. The Board Defendants did not take reasonable steps to protect S.C. from discrimination, and are thus liable under LAD.

81. In addition, Brundige and Solomon acted directly to ignore S.C.'s concerns and engaged in discrimination themselves.

82. S.C. suffered substantially from this and is entitled to damages.

83. The conduct was willful and wanton and without regard to the rights of the Plaintiffs.

84. Plaintiff James and S.C. are entitled to damages under the LAD.

## COUNT THREE (NEGLIGENCE CLAIMS AGAINST BOARD DEFENDANTS)

85. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

86. The Board Defendants had a duty to S.C. to keep her safe while in school, and to control the behavior or her fellow students.

87. The Board Defendants particularly have a duty to ensure the safety of students under their care during school hours and at school programs.

88. The Board Defendants had a duty to ensure that they controlled the behavior of the students and to take reasonable steps to prevent bullying, harassment and assaults that were being suffered by S.C.

89. The Board Defendants were put on notice of the concerns by numerous complaints from S.C. and her mother, but failed to take the necessary steps.

90. The conduct of the individual defendants was willful and wanton and without regard to the rights of S.C.

91. In so doing, the Board Defendants breached their duties to S.C. and are liable for the damages that resulted.

### COUNT FOUR (STATE CREATED DANGER UNDER 42 U.S.C. § 1983)

92. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

93. The Board Defendants created an unsafe environment for S.C. by their affirmative acts.

94. The harm ultimately caused was foreseeable and fairly direct;

95. Brundige, Solomon and Wilson each took steps to ensure that the harassment against S.C. was ignored.

96. Brundige regularly refused to ensure his duties to S.C. were met and consistently made excuses for failing to punish the bad actors.

97. As set forth by Dr. Nelson, the Board Defendants specifically manipulated bullying investigations in order to protect favored students, such as athletes and relatives of administrators, including Solomon's son, and Wilson specifically directed Dr. Nelson to avoid further reporting the rape and claimed he would handle it, but then swept the matter under the rug.

98. These actions simply shock the conscience.

99. S.C. was a foreseeable victim of the conduct of the Board Defendants.

100. S.C. was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general;

101. The Board Defendants affirmatively used their authority in a way that created a danger to the citizen or that rendered the S.C. more vulnerable to danger than had the state not acted at all.

102. Due to this behavior, S.C. suffered from sexual harassment, sexual assault and was continually harassed by students sending her sexually explicit material, even after the rape occurred.

## COUNT FIVE (BATTERY)

103. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

104. Holley forcibly raped S.C. which constitutes a forcible touching of her person.

105. Holley acted with the intent to cause harmful and offensive contact with S.C.

106. Such contact did in fact result.

107. Holley's conduct was willful and wanton and conducted without absolute indifference to the rights of S.C.

## COUNT SIX (CLAIM OF JAMES FOR TORT AGAINST MINOR CHILD)

108. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

109. Holley forcibly raped S.C. which constitutes the tort of battery against S.C.

110. James, as S.C.'s parent has suffered damages due to the need for medical and mental health care, and the need to pay for private school in place of a public education.

## COUNT SEVEN (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

111. The preceding allegations contained in this Complaint are incorporated herein by reference as if fully set forth herein.

112. Howard sent sexually explicit videos of himself masturbating via the Instagram platform to S.C.

113. The purpose of this was simply to harass and cause emotional distress to S.C.

114.     Howard's conduct was willful and wanton and conducted without absolute indifference to the rights of S.C.

WHEREFORE, Plaintiff seeks judgment against the defendants in their favor as follows:

A.  Compensatory damages in an amount to be determined at trial but no less than $10,000,000;

B.  Punitive damages;

C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable counsel fees, costs and reimbursements of expenses, including expert fees, in amounts to be determined by the Court;

D.  Awarding prejudgment interest; and

E.  Granting such other and further relief as is just and proper.

Hackensack, New Jersey
Dated: December 3, 2024

THE LAW OFFICE OF AVRAM E. FRISCH  LLC

/s/ Avram E. Frisch_____
Avram E. Frisch, Esq.
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
*Attorney for Plaintiff*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

Pursuant to Local rule 11.2, the undersigned certifies that to the best of his knowledge, the within matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding nor is any action or arbitration contemplated nor are other parties required to be joined in this action.

Hackensack, New Jersey  
Dated: December 4, 2024

/s/ Avram E. Frisch_____  
AVRAM E. FRISCH, ESQ.  
Attorney for Plaintiff

## **JURY DEMAND**

Plaintiff demands a jury for issues so triable.

Hackensack, New Jersey
Dated: December 4, 2024

/s/ Avram E. Frisch
AVRAM E. FRISCH, ESQ.
Attorney for Plaintiff